1

THE HONORABLE RICHARD A. JONES

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

11

WESTERN DISTRICT OF WASHINGTON

12

AT SEATTLE

13

14  DAVID HANSON, individually and on behalf
of all others similarly situated,

Case No. 2:16-cv-01661 RAJ

15

**PLAINTIFF'S MOTION FOR AND**

Plaintiff,

**MEMORANDUM IN SUPPORT OF**

16

**PRELIMINARY APPROVAL OF CLASS**
**ACTION SETTLEMENT**

17  v.

18  MGM RESORTS INTERNATIONAL, a
Delaware corporation, and COSTCO

NOTE ON MOTION CALENDAR:
March 9, 2018

19  WHOLESALE CORPORATION, a Delaware
corporation,

20

21          Defendants.

22

23

24

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND AND PROCEDURAL HISTORY ................................ 2

III.  THE TERMS OF THE SETTLEMENT AGREEMENT ......................... 3

       A.    Class Definition ............................................................................ 3

       B.    Monetary Relief ........................................................................... 4

       C.    Compensation for Class Representative ...................................... 4

       D.    Payment of Attorneys' Fees and Expenses ................................ 4

       E.    Payment of Notice and Administrative Costs ............................. 4

       F.    Release .......................................................................................... 5

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE
       CERTIFIED ..................................................................................... 5

       A.    The Proposed Class Meets the Requirements of Rule 23 ........... 6

             1.    The proposed Settlement Class is sufficiently
                   numerous ........................................................................... 6

             2.    Settlement class members share common questions
                   of law and fact .................................................................. 6

             3.    Plaintiff's claims are typical of settlement class
                   members' claims ................................................................ 8

             4.    Plaintiff and his Counsel will adequately represent
                   the Settlement Class .......................................................... 9

       B.    The Proposed Class Satisfies the Requirements of
             Rule 23(b)(3) .................................................................... 10

             1.    Common questions of law and fact predominate ............. 10

             2.    A class action is the superior method of resolving
                   the controversy ............................................................... 11

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

i

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINT CLASS
        COUNSEL ..................................................................................................... 12

VI.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY
        APPROVAL .................................................................................................... 13

        A.      The Proposed Settlement Is the Product of Serious,
                Informed, Non-Collusive Negotiations ............................................... 14

        B.      Each *Churchill* Factor Considered at This Stage Supports
                Preliminary Approving the Settlement ............................................... 17

                1.      The strength of Plaintiff's case, risk, of further
                        litigation, and risk of maintaining class action status ............ 18

                2.      Amount offered in settlement ................................................... 20

                3.      Extent of discovery completed and the stage of the
                        proceedings ............................................................................... 21

                4.      The experience and views of counsel ....................................... 22

VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE
        PLAN .............................................................................................................. 23

VIII.   CONCLUSION ............................................................................................... 24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................5, 10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..............................................................................................23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ..............................................................................................10

*Gen. Tel. Co. of the SW v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................6

**United States Circuit Court of Appeals Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ..............................................................................7, 8

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ..................................................................................5

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................................................5

*Churchill Vill., L.L.C. v. Gen. Elect.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................14, 17, 18, 20, 22, 23

*Class Plaintiffs v. City of Seattle*,
    995 F.2d 1268 (9th Cir. 1992) ..............................................................................13

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ................................................................................7

*Goldiner v. Datex-Ohmeda Cash Balance Plan*,
    No. 07-cv-02081, 2011 WL 13190205
    (W.D. Wash. May 10, 2011) ................................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................6, 8, 9, 10

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

iii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................... 14, 15, 17

*In re First Alliance Mortgage Co.*,
   471 F.3d 977 (9th Cir. 2006) ................................................................................ 7

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir.1995) ................................................................................ 22

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................. 20

*Parra v. Bashas', Inc.*,
   536 F.3d 975 (9th Cir. 2008 ................................................................................ 7

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 14

*Torres v. Pick-A-Part Auto Wrecking*,
   No. 16-cv-01915, 2018 WL 306287
   (E.D. Cal. Jan. 5, 2018) .................................................................................... 21

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................................. 11

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ........................................................................... 10

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................... 16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................... 8, 10, 11, 12

**United States District Court Cases**

*Ali v. Menzies Aviation, Inc.*,
   No. 16-cv-00262, 2016 WL 4611542
   (W.D. Wash. Sept. 6, 2016) ................................................................................ 6

*Aranda v. Caribbean Cruise Line, Inc.*,
   No. 12-cv-04069, 2017 WL 818854
   (N.D. Ill. Mar. 2, 2017) ............................................................................... 12, 13

*Betorina v. Randstad US, L.P.*,
   2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ................................................. 14, 18

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

iv

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

*Browning v. Yahoo! Inc.*,
     No. 04-cv-01463, 2006 WL 1390555
     (N.D. Cal. May 19, 2006) ..................................................................................14

*Cody v. SoulCycle Inc.*,
     No. 15-cv-06457, 2017 WL 6550682
     (C.D. Cal. Oct. 3, 2017) .....................................................................................18

*Darrington v. Assessment Recovery of Washington, LLC*,
     No. 13-cv-00286, 2013 WL 12107633
     (W.D. Wash. Nov. 13, 2013) ..............................................................................11

*Dunakin v. Quigley*,
     99 F. Supp. 3d 1297 (W.D. Wash. 2015) ...........................................................15

*Dunakin v. Quigley*,
     No. 14-cv-00567, 2017 WL 123011
     (W.D. Wash. Jan. 10, 2017) .................................................................................6

*Friedman v. 24 Hour Fitness USA, Inc.*,
     No. 06-cv-06282, 2009 WL 2711956
     (C.D. Cal. Aug. 25, 2009) .............................................................................11, 18

*Gaudin v. Saxon Mortg. Servs., Inc.*,
     No. 11-cv-01663, 2015 WL 7454183
     (N.D. Cal. Nov. 23, 2015) ..................................................................................19

*Geier v. m-Qube, Inc.*,
     No. 13-cv-00354, 2016 WL 3458345
     (W.D. Wash. June 24, 2016) .................................................................................5

*Griffith v. Providence Health & Servs.*,
     No. 14-cv-01720, 2017 WL 1064392
     (W.D. Wash. Mar. 21, 2017) ..............................................................................22

*Hopwood v. Nuance*,
     No. 13-cv-02132 (N.D. Cal. 2015) .....................................................................13

*Ikuseghan v. Multicare Health Sys.*,
     No. 14-cv-05539, 2016 WL 3976569
     (W.D. Wash. July 25, 2016) .....................................................................19, 20, 22

*In re Netflix Privacy Litig.*,
     No. 11-cv-00379, 2011 WL 13157369
     (N.D. Cal. Aug. 12, 2011) ..................................................................................13

v

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

*Jama v. GCA Services Group, Inc., et al.,*
    No. 16-cv-00331, 2017 WL 4758722
    (W.D. Wash. Oct. 20, 2017) ......................................................................6, 10

*Jordan v. Freedom Nat'l Ins. Servs. Inc.,*
    No. 16-cv-00362, 2016 WL 5363752
    (D. Ariz. Sept. 26, 2016) ........................................................................... 11

*K.M. v. Regence Blue Shield,*
    No. 13-cv-01214, 2015 WL 519932
    (W.D. Wash. Feb. 9, 2015) ............................................................................5

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.,*
    268 F.R.D. 670 (W.D. Wash. 2010) ............................................................6, 7

*R.H. v. Premera Blue Cross,*
    No. 13-cv-00097, 2014
    WL 3867617 (W.D. Wash. Aug. 6, 2014) ....................................................... 15

*R.H. v. Premera Blue Cross,*
    No. 13-cv-00097, Dkt. 90
    (W.D. Wash. Jan. 21, 2015) ........................................................................ 16

*Relente v. Viator, Inc.,*
    No. 12-cv-05868, 2015 WL 2089178
    (N.D. Cal. May 4, 2015) ............................................................................. 13

*Rinky Dink Inc v. Elec. Merch. Sys. Inc.,*
    No. 13-cv-01347, 2015 WL 11234156
    (W.D. Wash. Dec. 11, 2015) ........................................................................23

*Rinky Dink, Inc. v. World Bus. Lenders, LLC,*
    No. 14-cv-00268, 2016 WL 4052588
    (W.D. Wash. Feb. 3, 2016) ..........................................................13, 14, 20, 21

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ..........................................................15, 19, 21, 22

*Scott v. United Servs. Auto. Ass'n,*
    No. 11-cv-01422, 2013 WL 12251170
    (W.D. Wash. Jan. 7, 2013) ......................................................................16, 17

*Tavenner v. Talon Grp.,*
    No. 09-cv-01370, 2012 WL 1022814
    (W.D. Wash. Mar. 26, 2012) ..........................................................................7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................ 23

*Voeks v. Pilot Travel Ctrs.*,
    560 F. Supp.2d 718 (E.D. Wis. 2008) ...................................................... 18

*Wilson v. Maxim Healthcare Servs., Inc.*,
    No. 14-cv-00789, 2017 WL 2988289
    (W.D. Wash. June 20, 2017) ............................................................. 13, 14

**Statutory Provisions**

Fed. R. Civ. P. 23 ....................................................................................*passim*

15 U.S.C. § 1693 .....................................................................................*passim*

12 C.F.R. § 205.20 ............................................................................................. 3

**Other Authorities**

Herbert Newberg & Alba Conte, Newberg on Class Actions
    § 11 (4th ed. 2002) ....................................................................... 13, 24

Manual for Complex Litigation (Fourth)
    § 21.633 (2004) ..................................................................................... 5

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

vii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

## I.    INTRODUCTION

Plaintiff David Hanson ("Hanson" or "Plaintiff") respectfully moves the Court to enter preliminary approval of the proposed class action settlement reached with Defendants MGM Resorts International ("MGM") and Costco Wholesale Corporation ("Costco," and collectively, "Defendants"). The settlement—reached after significant litigation and months of arm's-length negotiations—resolves Plaintiffs' claims that Defendants charged customers monthly inactivity fees on their MGM Gift Cards much earlier than promised in violation of the Electronic Fund Transfers Act (the "EFTA"), 15 U.S.C. § 1693, *et seq.*, and other state laws.

The results achieved for the proposed class are outstanding. First, as a result of Plaintiff's and his counsel's pursuit of this action, Defendants have *fully refunded* every unlawful inactivity fee charged, thus compensating each member of the proposed settlement class for any monetary losses caused. In addition to this already significant relief, the settlement provides for the creation of an additional non-reversionary $150,000 common fund, from which each of the approximately 8,000 class member who submits a valid claim will be paid a *pro rata* share, after payment of settlement administration costs, attorneys' fees, and an incentive award to the class representative. This combined relief provides nearly everything the class could have hoped for, making it a truly an exceptional result, particularly in light of the difficulties and expense that lied ahead.[1]

As such, and as set forth below, this settlement is fair, reasonable, and adequate, and well within the range of approval. Accordingly, Plaintiff respectfully requests that the Court grant this motion, certify the proposed settlement class (defined below) for settlement purposes, appoint him as class representative and his counsel as class counsel, and approve the proposed notice plan.

---

[1]    A copy of the Stipulation of Class Action Settlement ("Settlement Agreement" or "Agreement") is attached as Exhibit 1. Unless otherwise noted, all capitalized words are defined consistently with their meaning in the Settlement Agreement.

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

## II.    BACKGROUND AND PROCEDURAL HISTORY

This case stems from Defendants' alleged common practice of charging customers monthly inactivity fees on their MGM Gift Cards well before such fees could be properly accessed. (Dkt. 1, ¶¶ 1–9.) Defendant MGM is a hospitality and entertainment company that sells gift cards to consumers, which can be redeemed at its various MGM venues. (*Id.* ¶¶ 22–24), while Costco is a brick-and-mortar where the Gift Cards were sold. (*Id.* ¶¶ 24, 25.)

The conduct at issue in Plaintiff's suit is alleged to occur as follows: In its stores, Defendant Costco displayed signs advertising MGM Gift Cards for the cost of $79.99, but with $100.00 of value. (*See id.* ¶ 27 Fig. 1.) The signs stated that an "[i]nactivity fee will apply," and the cards themselves contained further information. (*Id.* ¶¶ 28, 31 Fig. 2, 32 Fig. 3.) Specifically, the front of each card indicated that "[a] monthly Inactivity Fee will be assessed 18 months from [a specified date] on cards showing no activity," while the reverse side of the card indicates that "[a] monthly maintenance fee of $2.50 will be deducted from your card balance after 18 months of no activity from the date printed on the front of the card. (*Id.*) Contrary to the terms printed on both sides of the cards, however, MGM began charging a $2.50 monthly inactivity fee only twelve months from the date of purchase. (*Id.* ¶ 33.)

In March of 2015, Plaintiff purchased 140 MGM Gift Cards at a Costco in Seattle. (*Id.* ¶¶ 10, 36.) Like all the Gift Cards at issue, the front of each card indicated that a monthly inactivity fee would be assessed "18 months from March 2015 on cards showing no activity" (*id.* ¶¶ 38, 32 Fig. 2), while the reverse side of the card declared that a $2.50 monthly maintenance fee would be deducted from the card balance "after 18 months of no activity from the date printed on the front of the card." (*Id.* ¶¶ 38, 33 Fig. 3.) However, contrary to the terms printed on the front and back of the cards, Plaintiff claims he was assessed a monthly $2.50 fee beginning only 12 months after his purchase. (*Id.* ¶ 40.)

As a result, Plaintiff filed a nationwide class-action complaint against Defendants in the Western District of Washington claiming they violated the EFTA—which requires the full disclosure of gift card inactivity fees to be made on gift cards and mandates that such terms

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   cannot be modified or changed after a gift card is sold, *see* 15 U.S.C. § 1693l-1; 12 C.F.R. §

2   205.20—and other state laws. (*See* Dkt. 1.)

3         Less than a month later—and no doubt as a result of the litigation—Defendants attempted

4   to right its alleged wrong by fully refunding every Gift Card that had an inactivity fee

5   prematurely assessed. (Dkt. 16 at p. 2 n.4.) Around that same time, the Parties attempted to

6   discuss the potential for early resolution, but given their views as to the strengths of their

7   respective arguments, no agreement was reached. (*See* Declaration of Eve-Lynn J. Rapp (the

8   "Rapp Decl."), ¶ 4.) Unable to resolve their differences, Defendants moved to dismiss Plaintiff's

9   complaint as well as to strike the class allegations, which the parties fully briefed. (Dkts. 16, 22,

10  23.)[2] Subsequently, the Court granted Defendants' Motion as to Plaintiff's single Nevada-based

11  claim, but otherwise denied Defendants' Motion in its entirety. (Dkt. 28.)

12        Following the ruling on Defendants' Motion, the parties revisited the idea of resolution.

13  (Rapp Decl. ¶ 5.) In doing so, the parties engaged in significant informal discovery related to,

14  among other things, the scope of Defendants' gift card sales, the size of the putative class, the

15  amount of monetary harm caused by the allegedly unlawful inactivity fees, and the refunds

16  exercised by Defendants to date. (*Id.*) Thereafter—and only following months of various,

17  communications and arm's-length negotiations, as well as careful consideration and analysis by

18  counsel—the parties reached the settlement agreement now before the Court. (*Id.* ¶ 7.)

19  **III.   THE TERMS OF THE SETTLEMENT AGREEMENT**

20        The key terms of the Settlement Agreement are briefly summarized below:

21        **A.   Class Definition:** The settlement provides for a settlement class of all individuals

22  in the United States who, from October 24, 2010 to the date of preliminary approval of the

23  settlement, purchased an MGM Gift Card and were assessed an inactivity fee that was deducted

24  from the balance of funds remaining on the Gift Card. (Settlement Agreement § 1.26.) Based on

25  informal discovery and investigation, there are approximately 8,000 settlement class members.

26  _____

[2]       Defendants did not move to dismiss Plaintiff's EFTA claim. (Dkt. 16.)

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

3

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    (Rapp Decl. ¶ 6.)

2        **B.    Monetary Relief:** In addition to already refunding all inactivity fees previously

3    charged, Defendants have agreed to create a settlement fund in the amount of $150,000.00.

4    (Settlement Agreement § 1.28.) Each class member that submits a valid claim form will receive a

5    *pro rata* portion of the settlement fund (after payment of administrative costs, attorneys' fees,

6    and an incentive award to the class representative). (*Id.* §§ 1.27, 2.1.) There is no cap on the

7    amount of money a claiming class member can recover; thus, the entire fund will be exhausted

8    and no part of it will revert to Defendants. (*Id.* § 1.28.)

9        **C.    Compensation for Class Representative:** In recognition of Plaintiff Hanson's

10   time and effort serving as class representative, the parties have agreed, subject to Court approval,

11   that Hanson should receive a reasonable incentive award in an amount of $5,000 to be paid from

12   the Settlement Fund. (*Id.* § 8.2.)

13       **D.    Payment of Attorneys' Fees and Expenses:** The parties have agreed that

14   proposed class counsel is entitled to an award of reasonable attorneys' fees as well as

15   unreimbursed expenses in an amount to be determined by the Court and to be paid from the

16   settlement fund. (*Id.* § 8.1.) Proposed class counsel has agreed to limit their request for attorneys'

17   fees to no more than one-third (33 1/3%) of the settlement fund. (*Id.*) The Settlement Agreement

18   does not prevent Defendants, or any member of the settlement class, from opposing the requested

19   fees. (*Id.*) Any difference between the amount requested and the amount awarded will remain in

20   the settlement fund to be distributed to claiming class members; no such amount will revert to

21   Defendants. (*Id.*)

22       **E.    Payment of Notice and Administrative Costs:** The parties have agreed that

23   notice and administrative costs will be paid by Defendants out of the Settlement Fund. (*Id.* §

24   1.25.) Subject to the Court's approval, the parties agree that Heffler Claims Group will oversee

25   notice to the class, the processing of claim forms, and payment to class members. (*Id.* § 1.24.)

26

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    **F.    Release:** In exchange for the relief described above, settlement class members
2    agree to release Defendants from any and all claims relating in any way to the assessment of
3    inactivity fees on class members' MGM Gift Cards. (*Id.* §§ 1.21, 3.)

4    **IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

5         Before granting preliminary approval, the Court must first determine that the proposed
6    Settlement Class is appropriate for certification. To do so, the class must meet the requirements
7    of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Products, Inc. v. Windsor*,
8    521 U.S. 591, 614, 621 (1997); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.
9    2010); Manual for Complex Litigation (Fourth) § 21.633 (2004).[3]

10        Rule 23(a) requires that (1) the proposed class is so numerous that joinder of all
11   individual class members is impracticable (numerosity), (2) there are questions of law or fact
12   common to the proposed class (commonality), (3) the claims of the plaintiff are typical of those
13   of the class (typicality), and (4) the plaintiff will adequately protect the interests of the class
14   (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here, Plaintiff seeks certification
15   under Rule 23(b)(3), he must also demonstrate that the common questions predominate over any
16   questions affecting only individual members (predominance), and that a class action is superior
17   to other available methods for fairly and efficiently adjudicating the controversy (superiority).
18   Fed. R. Civ. P. 23(b)(3). Because the proposed class is being certified for settlement purposes
19   only, the Court "need not worry about whether the action could be manageably presented at
20   trial." *K.M. v. Regence Blue Shield*, No. 13-cv-01214, 2015 WL 519932, at *4 (W.D. Wash. Feb.
21   9, 2015) (Jones, J.) (citing *Amchem*, 521 U.S. at 620).

22

[3] Courts sometimes also inquire into whether the proposed class is "ascertainable," that is, "whether the
23   Court can reasonably identify which individuals are class members and which are not." *Geier v. m-Qube, Inc.*, No.
13-cv-00354, 2016 WL 3458345, at *2 (W.D. Wash. June 24, 2016). The Ninth Circuit, however, recently held that
24   there is no separate "administrative feasibility" or ascertainability requirement implicit in Rule 23. *See Briseno v.
ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017) ("[S]eparate administrative feasibility prerequisite to
25   class certification is not compatible with the language of Rule 23.") Nevertheless, membership in the proposed class
here is based on objective, ascertainable criteria: i.e. whether a person was charged an inactivity fee is readily
26   available from Defendants' records. (Settlement Agreement §§ 1.26, 4.1 (defining class membership and providing
for a Class List based on Defendants' records).)
27

As explained below, the requirements of Rule 23 are met here, and the Court can readily certify the class for settlement.

**A.     The Proposed Class Meets the Requirements of Rule 23.**

To start, the proposed class satisfies each element of Rule 23(a): numerosity, commonality, typicality, and adequacy.

**1.     The proposed Settlement Class is sufficiently numerous.**

The first prerequisite to class certification under Rule 23(a)—numerosity—requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of proposed class members required to satisfy the numerosity requirement, but generally a class of forty or more members is considered sufficient. *See Ali v. Menzies Aviation, Inc*., No. 16-cv-00262, 2016 WL 4611542, at *1 (W.D. Wash. Sept. 6, 2016); *see also Jama v. GCA Services Group, Inc., et al.*, No. 16-cv-00331, 2017 WL 4758722, at *3 (W.D. Wash. Oct. 20, 2017) (finding numerosity satisfied by class of 93 class members); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) (certifying class of 300); *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (certifying class of 27 known class members).

Here, based on information provided by Defendants, approximately 8,000 individuals purchased MGM Gift Cards and were charged inactivity fees. (Rapp Decl. ¶ 6.) Accordingly, the proposed class is so numerous that joinder of their claims is impracticable and Rule 23's numerosity requirement is easily satisfied.

**2.     Settlement class members share common questions of law and fact.**

The second requirement of Rule 23(a)—commonality—is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is construed permissively, and is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

6

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   predicates is sufficient, as is a common core of salient facts coupled with disparate legal

2   remedies within the class."). The common contention must be of such a nature that it is capable

3   of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue

4   that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

5       The permissive standard of commonality provides that "[where] the circumstances of

6   each particular class member vary but retain a common core of factual legal issues with the rest

7   of the class, commonality exists," *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008),

8   and "[i]t is not necessary that members of the proposed class share every fact in common." *Evon*

9   *v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotations

10  omitted). Indeed, "the theoretical possibility of individual issues is not enough to outweigh the

11  benefits of common resolution of classwide issues." *Tavenner v. Talon Grp.*, No. 09-cv-01370

12  2012 WL 1022814, at *4 (W.D. Wash. Mar. 26, 2012).

13      Here, the key issues in this litigation stem from Defendants' uniform course of conduct

14  in: (i) consistently representing that inactivity fees will only apply after eighteen months of

15  nonuse; and (ii) charging such fees after only twelve months of nonuse. *See In re First Alliance*

16  *Mortgage Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (focusing on defendant's course of conduct in

17  commonality analysis); *McCluskey*, 268 F.R.D. at 676 (finding common questions of law and

18  fact existed where "defendants have engaged in standardized conduct toward the members of the

19  proposed class"). That similar conduct raises various factual and legal issues that are common to

20  each member of the proposed settlement class, including, among other things, whether (i)

21  members of the proposed class were prematurely charged inactivity fees on their MGM Gift

22  Cards, (ii) whether Defendants adequately disclosed how often such fees would be assessed, (iii)

23  whether, in assessing such fees, Defendants' conduct violated the Electronic Fund Transfers Act,

24  15 U.S.C. § 1693 *et seq.* and other state laws, and (iv) whether the members of the proposed

25  class are entitled to statutory damages.

26      These common questions—whose answers depend solely on Defendants' common course

27  of conduct—establish commonality. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957

1   (9th Cir. 2013) (noting that the key inquiry is "whether class treatment will generate common

2   answers apt to drive the resolution of the litigation") (internal quotations omitted). Thus, Rule

3   23(a)'s commonality requirement is satisfied.

4             **3.    Plaintiff's claims are typical of settlement class members' claims.**

5             Rule 23(a)'s next requirement—typicality—requires that the class representative's claims

6   be typical of those of the putative class he seeks to represent. Fed. R. Civ. P. 23(a)(3). The

7   purpose of this requirement is "to assure that the interest of the named representative aligns with

8   the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th

9   Cir. 2010). The test of typicality is "whether other members have the same or similar injury,

10   whether the action is based on conduct which is not unique to the named plaintiff[], and whether

11   other members have been injured by the same course of conduct." *Id.*; *see also Ali*, 2016 WL

12   4611542, at *2 (W.D. Wash. Sept. 6, 2016). This is a "permissive" standard and is met where the

13   representative claims "are reasonably co-extensive with those of absent class members." *Hanlon*,

14   150 F.3d at 1020. At bottom, "a class representative must be part of the class and possess the

15   same interest and suffer the same injury as the class members." *Ali*, 2016 WL 4611542, at *2

16   (quoting *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 156 (1982)).

17             Here, as Plaintiff is in a position identical to each and every other member of the

18   proposed settlement class, typicality is undoubtedly met. Namely, Hanson suffered the same

19   injury as every other class member as he was prematurely charged inactivity fees on his MGM

20   Gift Cards after only twelve months of nonuse, contrary to the terms on those cards.

21   Accordingly, he has the same interest as every other settlement class member—i.e. being

22   refunded the amount he was charged and obtaining all available statutory relief for Defendants'

23   alleged violations. Thus, the typicality requirement is therefore satisfied.

24

25

26

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

8

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

### 4.      Plaintiff and his Counsel will adequately represent the Settlement Class.

Rule 23(a)'s final requirement—adequacy—requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that the interests of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims typical to those of the class).

Plaintiff Hanson clearly meets the requirements to be named class representative. First, as discussed above, he shares the same interest in securing relief for the claims at issue as every other member of the proposed settlement class, and there is no claim or evidence of any conflict of interest. Next, Plaintiff has demonstrated his willingness to vigorously prosecute this case, as shown by his eager pursuit of this action to date. (Rapp Decl. ¶ 9.) To be sure, Hanson has regularly assisted his counsel throughout the case, including responding to counsel's request for information during their initial investigations, reviewing documents and engaging with his counsel regarding the settlement currently before the Court. (*Id.*) As such, Hanson has demonstrated that he will fairly and adequately protect the settlement class's interest.

Similarly, proposed class counsel has and will continue to adequately protect the interest of the proposed settlement class. (*Id.* ¶ 10.) Proposed class counsel are well-qualified and experienced members of the plaintiffs' bar who have extensive experience in class actions of similar size, scope, and complexity to this case. (*Id.* & Rapp Decl., Exhibit A (Firm Resume of Edelson PC).) Class counsel have frequently been appointed lead class counsel by courts throughout the country and have the resources necessary to conduct litigation of this nature.

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

9

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    (Rapp Decl. ¶ 10.) Moreover, class counsel have already diligently investigated, prosecuted, and

2    dedicated substantial resources to the claims in this action, and will continue to do so throughout

3    its pendency. (*Id.*) *See Jama*, 2017 WL 4758722, at *6 (finding adequacy requirement met when

4    "both the named plaintiffs and plaintiffs' counsel have demonstrated a commitment to vigorously

5    prosecuting [the] action on behalf of the class"). Thus, Rule 23(a)'s adequacy requirement is

6    met.

7           **B.      The Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

8           In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed

9    class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority.

10   *See* Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual interests of

11   the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at

12   1022. Both predominance and superiority requirements of Rule 23(b)(3) are satisfied here.

13          **1.      Common questions of law and fact predominate.**

14          "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3)

15   asks whether these common questions predominate." *Wolin*, 617 F.3d at 1172. That is, Rule

16   23(b)(3)'s predominance requirement tests "whether [the] proposed class[] [is] sufficiently

17   cohesive to warrant adjudication by representation." *Id.* (citing *Amchem*, 521 U.S. at 623–24).

18   Whether common issues predominate depends on "the elements of the underlying cause of

19   action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Notably,

20   however, that the extent of a class member's damages may be different does not defeat

21   predominance. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

22          Here, as detailed in Section IV.A.2, the elements of class members' claims present

23   numerous common factual and legal questions, all of which predominate the litigation. As

24   discussed above, such questions include, for example, whether: (i) members of the proposed

25   class were charged inactivity fees on their MGM Gift Cards; (ii) Defendants failed to comply

26   with the relevant disclosure requirements; (iii) Defendants inaccurately led settlement class

27   members to believe that no activity fee would be assessed before a certain time; (iv) Defendants'

1    common practice of charging inactivity fees to customers was unlawful; and whether (v)

2    settlement class members are entitled to damages. Each of these common questions can be

3    resolved in a single stroke for all members of the proposed class. Plaintiff thus satisfies the

4    predominance element of Rule 23(b)(3). *See, e.g.*, *Friedman v. 24 Hour Fitness USA, Inc.*, No.

5    06-cv-06282, 2009 WL 2711956, at *10–11 (C.D. Cal. Aug. 25, 2009) (finding common issues

6    predominated in case brought under EFTA); *Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. 16-cv-

7    00362, 2016 WL 5363752, at *4 (D. Ariz. Sept. 26, 2016) (same).

8              **2.     A class action is the superior method of resolving the controversy.**

9              Finally, certification of this suit as a class action is superior to other methods available to

10   fairly, adequately, and efficiently resolve the claims of the class. To meet the superiority

11   requirement, a plaintiff must show that a class action is the "most efficient and effective means

12   of resolving the controversy." *Wolin*, 617 F.3d at 1175–76; *see also Valentino v. Carter-Wallace,*

13   *Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (describing a class action as superior when it will

14   reduce the costs inherent in litigation and "no realistic alternative exists" for the class members).

15   "Where recovery on an individual basis would be dwarfed by the cost of litigating on an

16   individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175; *see*

17   *also Darrington v. Assessment Recovery of Washington, LLC*, No. 13-cv-00286, 2013 WL

18   12107633, at *13 (W.D. Wash. Nov. 13, 2013).

19             That is the case here, as individual damages are small compared to what class members

20   can hope to obtain from individual litigation and the costs of such pursuits. Indeed, if class

21   members were to pursue their claims on an individual basis, their ability to recovery actual

22   damages would be limited—given that Defendants have already refunded the inactivity fees

23   assessed—and the availability of statutory damages would be, at best, uncertain, given the

24   existence of such refunds and the fact that damages under the EFTA are discretionary and

25   capped. 15 U.S.C. § 1693m(a). *See Jordan*, 2016 WL 5363752, at *4 (noting that the EFTA's

26   statutory damages are "hardly enough incentive for individuals to prosecute their claims in

27   federal court"); *see also Friedman*, 2009 WL 2711956 at *11 ("[T]he potential recovery [for

1  individual EFTA claims] would . . . be too low for class members to pursue individually, given

2  the burdens and risks of bringing a lawsuit."). Moreover, avoiding the need to repeat identical

3  trials with the same evidence and arguments for each one of the approximately 8,000 class

4  members, as well as the costs and judicial inefficiencies attendant with such individual litigation,

5  make the superiority of resolving this case in a single action all the more clear. *See Wolin*, 617

6  F.3d at 1176 (noting that "[f]orcing individual [consumers] to litigate their cases . . . is an

7  inferior method of adjudication" and that "class-wide adjudication of common issues will reduce

8  litigation costs and promote greater efficiency.")

9       Accordingly, a class action is the superior method for adjudicating the controversy

10  between the parties, and as all requirements of class certification under Rule 23 are met, the

11  proposed class should be certified.

12  **V.  PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL**

13       Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must

14  fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). In making

15  this determination, the Court must consider the following attributes of counsel: (1) work in

16  identifying or investigating potential claims; (2) experience in handling class actions or other

17  complex litigation and the type of claims asserted in the case; (3) knowledge of the applicable

18  law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

19       Plaintiff's counsel readily meets these criteria. First, Edelson PC has devoted—and will

20  continue to devote—a significant amount of time and effort to this litigation, beginning with its

21  initial investigation of Plaintiff's allegations. (Rapp Decl. ¶ 10.) And, through the briefing of

22  Defendants' motions and the parties' settlement negotiations, they have at all times vigorously

23  represented Hanson and the proposed class's claims. (*Id.*)

24       Beyond that, the attorneys at Edelson PC also have extensive experience in complex

25  litigation, and have been routinely appointed class counsel in similar consumer class actions.

26  (*See* Firm Resume of Edelson PC, Exhibit A to the Rapp Decl.); *see also Aranda v. Caribbean*

27  *Cruise Line, Inc.*, No. 12-cv-04069, 2017 WL 818854, at *4 (N.D. Ill. Mar. 2, 2017) (appointing

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

12

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   Edelson PC settlement class counsel in largest ever TCPA class action, noting "[i]t is undisputed

2   that class counsel are experienced and respected members of the plaintiff's class action bar" and

3   "have extensive experience litigating consumer class actions"); *Hopwood v. Nuance*, No. 13-cv-

4   02132 (N.D. Cal. 2015); *In re Netflix Privacy Litig.*, No. 11-cv-00379, 2011 WL 13157369, at *3

5   (N.D. Cal. Aug. 12, 2011) (appointing Edelson PC interim lead counsel, commenting that while

6   two other firms had impressive resumes and litigation experience, Edelson PC's "significant and

7   particularly specialized expertise in . . . class actions renders them superior to represent the

8   putative class").

9        For these reasons, the Court should appoint Rafey S. Balabanian and Eve-Lynn Rapp

10   of Edelson PC as class counsel.

11   **VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

12        After determining that the proposed class should be certified, the Court must determine

13   whether the settlement warrants approval. Fed. R. Civ. P. 23(e). This is a two-step process: "(1)

14   preliminary approval of the settlement; and (2) following a notice period to the class, final

15   approval of the settlement at a fairness hearing." *Relente v. Viator, Inc.*, No. 12-cv-05868, 2015

16   WL 2089178, at *2 (N.D. Cal. May 4, 2015). At the preliminary approval stage, the court

17   determines whether the "proposed settlement [is] within the range of final approval" such that

18   notice should be disseminated to the class. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-

19   cv-00268, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016); *see also* Herbert Newberg &

20   Alba Conte, Newberg on Class Actions § 11.25 at 3839 (4th ed. 2002).

21        While the Ninth Circuit has a "strong judicial policy" favoring settlement of class actions,

22   *Class Plaintiffs v. City of Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992), before the Court

23   preliminarily approves a class action settlement, it "has a responsibility to review a proposed

24   class action settlement to determine whether the settlement is 'fundamentally fair, adequate, and

25   reasonable,'" *Wilson v. Maxim Healthcare Servs., Inc.*, No. 14-cv-00789, 2017 WL 2988289, at

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ
13
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   *1 (W.D. Wash. June 20, 2017) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

2   2003)); Fed. R. Civ. P. 23(e).

3        Where, as here, a settlement agreement is negotiated prior to adversarial class

4   certification, courts generally look to two guideposts in deciding whether to preliminarily

5   approve the settlement: (1) whether there are any signs of collusion between class counsel and

6   the defendant, and (2) whether the so-called *Churchill* factors suggest the settlement is fair. *In re

7   Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quoting *Churchill

8   Vill., L.L.C. v. Gen. Elect.*, 361 F.3d 566, 575 (9th Cir. 2004)). At the preliminary approval stage,

9   this Court can conduct a "less searching" inquiry than at final approval, and "seek[] merely to

10  identify any 'glaring deficiencies' prior to sending notice to class members." *Rinky Dink, Inc.*,

11  2016 WL 4052588, at *4.

12       While some courts in the Ninth Circuit, most notably in the Northern District of

13  California, have questioned approaching the preliminary approval inquiry with less scrutiny than

14  the final approval inquiry, *see, e.g., Betorina v. Randstad US, L.P.*, 2017 WL 1278758, *6 (N.D.

15  Cal. Apr. 6, 2017) (citing cases), an examination of the relevant considerations here supports

16  preliminary approval of the proposed settlement however rigorously this Court scrutinizes it.

17       **A.    The Proposed Settlement Is the Product of Serious, Informed, Non-Collusive
18              Negotiations.**

19       When a settlement is negotiated prior to adversarial class certification, the potential for a

20  breach of the duty owed to putative class members is higher, and courts must be "particularly

21  vigilant" when assessing whether the settlement is the product of collusion. *In re Bluetooth*, 654

22  F.3d at 946–47. Here, the proposed settlement class is as broad as the classes defined in

23  Plaintiff's complaint, and has not been altered in effort to sweep in more class members to secure

24  a more expansive release. *See Browning v. Yahoo! Inc.*, No. 04-cv-01463, 2006 WL 1390555, at

25  *2 (N.D. Cal. May 19, 2006) (declining to approve settlement when class definition expanded to

26  include more members and release additional claims).

27

1     In addition, there was absolutely no collusion between Plaintiff's counsel and Defendants

2  in negotiating the settlement. (Rapp Decl. ¶ 8.) Rather, the parties—counsel both of whom are

3  well versed in the litigation of claims of this nature—engaged in adversarial motion practice and

4  informal discovery, before agreeing to the proposed settlement now before the court. (*Id.*) Those

5  actions led to a comprehensive evaluation of the case's strengths and weaknesses and to well-

6  informed settlement discussions. (*Id.*) *See Dunakin v. Quigley*, No. 14-cv-00567, 2017 WL

7  123011, at *2 (W.D. Wash. Jan. 10, 2017) ("A presumption of fairness and adequacy attaches to

8  a class action settlement reached in arm's-length negotiations by experienced class counsel after

9  meaningful discovery."); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

10  2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated

11  resolution."); *R.H. v. Premera Blue Cross,* No. 13-cv-00097, 2014 WL 3867617, at *4 (W.D.

12  Wash. Aug. 6, 2014) (Jones, J.) (granting preliminary approval where "the [s]ettlement

13  [a]greement resulted from extensive arm's length negotiations"). Indeed, the settlement here was

14  reached only after months of discussions and arm's-length negotiations between counsel. (Rapp

15  Decl. ¶ 7.) Moreover, the parties did not discuss attorneys' fees, costs, and expenses until after

16  reaching an agreement in principle on the benefits for the settlement class members, subject to

17  preparation and execution of a written settlement agreement. (*Id.* ¶ 8.)

18     Furthermore, and notably, none of the "signs" the Ninth Circuit has identified of a

19  potentially collusive settlement—(1) "when counsel receive a disproportionate distribution of the

20  settlement, or when the class receives no monetary distribution but class counsel are amply

21  rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the

22  parties arrange for fees not awarded to revert to defendants rather than be added to the class

23  fund," *In re Bluetooth*, 654 F.3d at 947—are present here.

24     First, proposed class counsel is not receiving a disproportionate distribution of the

25  settlement fund in its request for up to one-third of the $150,000 common fund, or being amply

26  rewarded while the class receives no monetary distribution. To the contrary, class counsel has

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

15

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    agreed to cap its request for fees at one-third of the Settlement Fund at most. (Settlement

2    Agreement § 8.1.)[4]

3         While the Ninth Circuit considers 25% the "benchmark rate," this is merely a starting

4    point to the fee request analysis and is inappropriate in cases where, as here, class counsel has

5    "achieved exceptional results for the class," "generated benefits beyond the cash settlement

6    fund," and pursued the case despite the relatively modest potential recovery. *Vizcaino v.*

7    *Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th Cir. 2002) (discussing relevant considerations in

8    departing from the benchmark rate). In particular—far from recovering no monetary benefit for

9    the class—class counsel's efforts resulted in full refunds for each class member, *in addition* to

10   the significant cash payments class members stand to receive from the non-reversionary

11   settlement fund. As such, the Court should find a request for fees in the amount of one third of

12   the settlement fund—should class counsel ultimately seek it—reasonable, as it has in similar

13   cases. *See, e.g., Goldiner v. Datex-Ohmeda Cash Balance Plan*, No. 07-cv-02081, 2011 WL

14   13190205, at *1 (W.D. Wash. May 10, 2011) (Jones, J.) (finding class counsel's request for one

15   third of the settlement fund reasonable and granting final approval); *R.H. v. Premera Blue Cross*,

16   No. 13-cv-00097, Dkt. 90, at *3 (W.D. Wash. Jan. 21, 2015) (Jones, J.) (awarding class counsel

17   a fee of 35% of the common cash fund).

18        Moreover, aside from requesting a reasonable incentive award to be paid to Hanson in an

19   amount determined by the Court for his involvement in the case, no class member will be given

20   preferential treatment at the expense of another. *See Scott v. United Servs. Auto. Ass'n*, No. 11-

21   cv-01422, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval

22   generally granted absent "obvious deficiencies, such as unduly preferential treatment of class

23   representatives or of segments of the class") (citations omitted). That is, in addition to having

24   ---

   [4]      Should the Court preliminary approve the settlement, proposed class counsel will determine the exact
25   amount of their attorney fee request and separately petition the court for approval after notice of the settlement is
   disseminated, but before class members' opportunity to opt-out or object. Notwithstanding, to ensure settlement
26   class members are adequately notified of counsel's potential fee, the notice documents will inform them of the
   maximum amount that could potentially be sought.

27

1  their funds fully refunded, each and every class member who submits a valid claim will be

2  entitled to a *pro rata* share of the Settlement Fund. (Settlement Agreement § 2.1.)

3        Second, there is no "clear sailing" provision in the settlement in which Defendants agree

4  not to object to the amount of fees ultimately requested by counsel. *See In re Bluetooth*, 654 F.3d

5  at 947 (9th Cir. 2011) (defining clear sailing provisions). Rather, Defendants, as well as any

6  member of the class, are free to object to Plaintiff's fee request. Third, and finally, the last

7  warning sign identified in *In re Bluetooth*—the possibility that funds revert back to the

8  Defendants—is similarly absent from this settlement. That is, in no event will any settlement

9  funds be transferred back to Defendants. (*Id.* § 1.26 (noting that the settlement fund is "non-

10  reversionary").)

11        Simply put, there are no signs of collusion here (because there was no collusion) that

12  would preclude preliminary approval. *See Scott*, 2013 WL 12251170, at *3 (finding settlement

13  non-collusive when months of "intensive" and "adversarial" negotiations led to agreement).

14  Thus, this factor warrants the Court's preliminary approval of the settlement.

15   **B.    Each *Churchill* Factor Considered at This Stage Supports Preliminarily Approving the Settlement.**

16        As noted above, in addition to looking for possible signs of collusion, courts assessing a

17  proposed class action settlement weigh the various *Churchill* factors. These are:

18   (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

19   duration of further litigation; (3) the risk of maintaining class action status

20   throughout the trial; (4) the amount offered in settlement; (5) the extent of

21   discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

22   *In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill*, 361 F.3d at 575). Here, there is no

23   governmental participant and the reaction of class members cannot be known until after the class

24   has been notified of the settlement, so the last two factors are not applicable. Consideration of the

25   other six *Churchill* factors, however, strongly weigh in favor of preliminary approval.

26

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

### 1.   The strength of Plaintiff's case, risk of further litigation, and risk of maintaining class action status.

2

The first three *Churchill* factors—the strength of Plaintiff's case, the risk of further

3

litigation, and the risk of maintaining class action status—are all tied together, and each support

4

preliminarily approving the settlement. *See Betorina*, 2017 WL 1278758, at *7 (analyzing the

5

first three *Churchill* factors together). While Plaintiff is confident in the strength of his case and

6

believes he would ultimately prevail in class certification and at trial, he nonetheless recognizes

7

that the risks inherent in further litigation are not insignificant. (Rapp Decl. ¶ 11).

8

Foremost, there is an imminent risk that Plaintiff would be unable to maintain the case as

9

a class action should obtaining certification be of the adversarial nature. Specifically, because

10

EFTA's actual damages provision provides for "any actual damage sustained by [the] consumer

11

*as a result*" of noncompliance with the EFTA, 15 U.S.C. § 1693m(a)(1) (emphasis added),

12

Defendants would likely argue that each class member must individually prove detrimental

13

reliance on the inactivity fee disclosures to recover actual damages, and as a result, Plaintiff's

14

ability to demonstrate commonality, typicality and predominance, would be undermined.

15

*See Voeks v. Pilot Travel Ctrs.*, 560 F. Supp.2d 718, 725 (E.D. Wis. 2008) ("To show actual

16

damages under § 1693m(a)(1) a plaintiff must plead and prove detrimental reliance"). And,

17

while Plaintiff is confident that this argument is wrong and would not withstand the Court's

18

scrutiny, *see Friedman,* WL 2711956, at *10–11 (finding that plaintiffs need not show individual

19

proof of reliance to recover EFTA's actual damages and certifying the class), the Court's

20

ultimate ruling is by no means certain.

21

Next, the fact that this case involved the litigation of claims with little legal precedent—

22

particularly as it relates to gift card inactivity fees under the EFTA—must also be considered. To

23

be sure, the absence of a vast body of case law makes the outcome of the case less certain and

24

thus strengthens the concreteness provided by the deal at hand. *See Cody v. SoulCycle Inc.*, No.

25

15-cv-06457, 2017 WL 6550682, at *3 (Oct. 3, 2017) (finding settlement favorable to continued

26

litigation in part because the "dearth of legal precedent related to the EFTA . . . makes the

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

18

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

outcome of [plaintiff's] action less certain"). For example, it is unclear whether Plaintiff would be able to prove that Defendants' violated EFTA's disclosure requirements, as MGM technically disclosed on its gift cards (i) that an inactivity fee may be charged, (ii) the amount of such fee ($2.50), (iii) how often the fee would be assessed (monthly), and (iv) that such fee may be assessed for inactivity. (*See* Dkt. 1, ¶¶ 31 Fig. 2, 32 Fig. 3); 15 U.S.C.A. § 1693l-1(b)(3). Thus, in order to prevail, Plaintiff would need to convince the Court that because the cards stated that inactivity fees would apply after 18 months of nonuse, yet were assessed after only 12 months, Defendants did not properly disclose *how often* inactivity fees would be assessed. While Plaintiff is confident in his position, he recognizes the risks in establishing Defendants' EFTA liability, especially in light of the scant case law.

Moreover, even if Plaintiff were able to establish Defendants' liability, he may be unable to prove any actual damages, and therefore, would have been left to pursue only discretionary statutory damages under the EFTA. That is, Defendants will argue—as they did, albeit prematurely, in their motion to dismiss (*see* Dkts. 16, 28)—that because MGM refunded every Gift Card that was charged an inactivity fee, Plaintiff cannot establish any actual damages as a result of the alleged conduct at issue. Although Plaintiff contested this argument on several bases (*see* Dkt. 22 at p. 9–13), he nonetheless recognizes the challenges this argument presents. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *5 (N.D. Cal. Nov. 23, 2015) (finding that relative strength of the defendant's case favored settlement because plaintiff faced difficulties in establishing damages on a class-wide basis).

And even assuming Plaintiff won on the merits at trial, there would be potential for appeals, which could take years and further delaying the class's relief or barring it altogether. (Rapp Decl. ¶ 11.) *See Rodriguez*, 563 F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement."); *Ikuseghan v. Multicare Health Sys.*, No. 14-cv-05539, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay. The Settlement avoids these challenges."). In addition to the risk

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    of losing at any of these stages, continuing to litigate these claims through trial and appeals

2    would undoubtedly be complex and expensive. (Rapp Decl. ¶ 11); *see Rinky Dink*, 2016 WL

3    4052588, at *5 (finding preliminary approval appropriate when considering the expense of the

4    "additional depositions, expert work, and motion work [that] would have to be completed before

5    trial").

6         In sum, the strength of Plaintiff's case balanced against the risk and expense of

7    continuing on weighs strongly in favor preliminary approval. *Rinky Dink*, 2016 WL 4052588, at

8    *5 (finding first three *Churchill* factors supported preliminary approval when plaintiffs were

9    confident in their case but continuing to litigate was "inherently expensive"); *Ikuseghan*, 2016

10   WL 3976569, at *4 ("Absent the proposed Settlement, Class Members would likely not obtain

11   relief, if any, for a period of years.").

12                    **2.    Amount offered in settlement.**

13        The next *Churchill* factor, the relief offered in settlement, similarly weighs in favor of

14   preliminary approval. In addressing this factor, Courts typically weigh the relief obtained in the

15   settlement against the possible relief that could be obtained at trial. *See, e.g. Ikuseghan*, 2016 WL

16   3976569, at *4 (comparing value obtained in TCPA settlement against possible recovery at trial).

17   That being said, if the amount offered in settlement is small compared to the possible recovery at

18   trial, that does not in and of itself mean the settlement should be rejected. *See Officers for Justice*

19   *v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("[A]

20   cash settlement amounting to only a fraction of the potential recovery will not per se render the

21   settlement . . . unfair").

22        Here, the settlement amount offered, on top of the fully refunded inactivity fees, is an

23   extraordinary result for the class considering the potential challenges that would lie ahead. That

24   is, since class members were fully refunded for each inactivity fee charged, their only claim for

25   significant monetary relief is under the EFTA's statutory damages provision. *See* 15 U.S.C.A. §

26

27

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

20

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1693m. Those damages, however, are strictly limited to $500,000 for the *entire* class,[5] are

wholly within the discretion of the Court, and would only be recoverable after costly and

protracted litigation, including adversarial class certification, potential summary judgment

motions, and trial. And crucially, because the EFTA provides for no minimum statutory

damages, even if they were to successfully prove their EFTA claims, the class could end up with

no monetary relief at all. *See Rinky Dink*, 2016 WL 4052588, at *5 (approving settlement where

plaintiffs accepted "a smaller[,] certain award" than the uncertainty of continuing to litigate).[6]

All that said, the non-reversionary $150,000 settlement fund, which represents nearly

one-third of the class's *maximum* potential relief, is an exceptional result that will provide

immediate cash payments to claiming class members—in addition to their already refunded

inactivity fees—and avoid the risks attendant with continued litigation. *See Torres v. Pick-A-Part

Auto Wrecking*, No. 16-cv-01915, 2018 WL 306287, at *6 (E.D. Cal. Jan. 5, 2018) (finding that

the amount offered in settlement weighed in favor of preliminary approval where the proposed

settlement represented only 4.4% of the class's maximum recovery); *see also Rodriguez*, 563

F.3d at 965 (upholding approval when the settlement "is in cash, not in kind, which is a good

indicator of a beneficial settlement").

For these reasons, the relief secured by this settlement warrants its approval.

### 3. The extent of discovery completed and the stage of the proceedings.

Next, the extent of discovery completed and the stage of the proceedings demonstrate that

the parties "had enough information to make an informed decision about the strength of their

cases and the wisdom of settlement." *Rinky Dink*, 2016 WL 4052588, at *5. Here, a settlement

---

[5] *See* 15 U.S.C.A. § 1693m(a)(2)(B) (stating that, in class actions under the EFTA, "no minimum recovery shall be applicable" and "the total recovery . . . shall be not more than the lesser of $500,000 or 1 per centum of the net worth of the defendant").

[6] Plaintiff recognizes the risk of recovering only nominal statutory damages, especially in light of Defendants' prompt refund of all inactivity fees, which the Court would likely consider in determining any statutory damage award. *See* 15 U.S.C.A. § 1693m(b)(2) ("In determining the amount of liability . . . court shall consider, among other relevant factors[,] . . . the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of the defendant, the number of persons adversely affected, and the extent to which the noncompliance was intentional.").

1    was reached only after Plaintiff's fulsome investigation, the exchange of informal information

2    between the parties, and after the Court's ruling on Defendants' motion to dismiss, all which

3    informed the negotiations. (Rapp Decl. ¶¶ 5-8.) *Griffith v. Providence Health & Servs.*, No. 14-

4    cv-01720, 2017 WL 1064392, at *4 (W.D. Wash. Mar. 21, 2017) (finally approving the proposed

5    settlement where negotiations were preceded by informal discovery and full briefing at the

6    motion to dismiss stage).

7         Indeed, before engaging in settlement negotiations, the parties were fully informed on all

8    pertinent issues and had a full understanding of their positions and views of the case. (Rapp Decl.

9    ¶¶ 6-7.) As such, the parties were capable of assessing the benefits of a potential settlement and

10   were ultimately able to reach the proposed settlement agreement through several rounds of

11   arm's-length negotiations. (*Id.* ¶ 7.) *See Ikuseghan*, 2016 WL 3976569, at *3 (approving

12   settlement reached "between experienced attorneys who are familiar . . . with the legal and

13   factual issues of this case in particular"). This factor supports preliminary approval.

14                    **4.      The experience and views of counsel.**

15        The final *Churchill* factor that can be considered here—the views and experience of

16   counsel—likewise demonstrates the proposed settlement warrants preliminary approval. As

17   discussed in Section V, *supra*, proposed class counsel have extensive experience in litigating

18   complex class actions and were prepared to negotiate a settlement that would resolve the

19   litigation in the best interests of the class. (Rapp Decl. ¶ 7) After multiple rounds of arm's-length

20   negotiations, class counsel believes that the settlement fair, reasonable, and adequate, and in the

21   best interests of the class. (*Id.* ¶ 12); *see Rodriguez*, 563 F.3d at 967 ("[P]arties represented by

22   competent counsel are better positioned than courts to produce a settlement that fairly reflects

23   each party's expected outcome in litigation.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,

24   378 (9th Cir.1995)); *Ikuseghan*, 2016 WL 3976569, at *4 (considering that class counsel, "who

25   are experienced and skilled in class action litigation, support the [s]ettlement as fair, reasonable,

26   and adequate, and in the best interests of the [c]lass as a whole," and approving settlement). For

27   their part, Defendants have agreed the settlement should be approved and that it is preferable to

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

22

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    continuing to litigate. (*See* Settlement Agreement § H); *Vandervort v. Balboa Capital Corp.*, 8 F.

2    Supp. 3d 1200, 1207 (C.D. Cal. 2014) (considering that "[d]efendant's counsel endorsed the

3    [s]ettlement as fair, reasonable, and adequate" and weighing in favor of approval).

4           Therefore, in addition to the proposed settlement being the product of informed, non-

5    collusive negotiations, each *Churchill* factor that can be considered at this juncture warrants the

6    settlement's preliminary approval, and the Court should confidently do so.

7    **VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

8           Once a class has been certified, Due Process and Rule 23 require that the Court "direct to

9    class members the best notice that is practicable under the circumstances, including individual

10   notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

11   23(c)(2)(B). That is, whenever possible "[i]ndividual notice must be sent to all class members

12   whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle &*

13   *Jacquelin*, 417 U.S. 156, 173 (1974).

14          Here, the parties have agreed upon a multi-part notice plan to be carried out by Heffler

15   Claims Group (the "Settlement Administrator"), a well-respected class action settlement

16   administrator. *See, e.g. Rinky Dink Inc v. Elec. Merch. Sys. Inc.*, No. 13-cv-01347, 2015 WL

17   11234156, at *8 (W.D. Wash. Dec. 11, 2015) (noting "Heffler's third party status and extensive

18   experience in administering claims").

19          First, within thirty (30) days after the entry of an order granting preliminary approval, the

20   Settlement Administrator will send direct notice via email to each settlement class member

21   whose email address Defendants have in their records. (Settlement Agreement § 4.1(b);

22   Settlement Agreement, Exhibit B.)

23          Second, if no email address is available for any given class member, or in the event that

24   any email is undeliverable, the Settlement Administrator will, no later than forty-five (45) days

25   after the entry of an order granting preliminary approval, send a postcard notice with an attached

26   Claim Form via First Class U.S. Mail to the physical address Defendants have on file.

27   (Settlement Agreement § 4.1(b); Settlement Agreement, Exhibit C.).) The Settlement

1  Administrator will make reasonable efforts to re-mail returned notices that include a forwarding

2  address or to find a forwarding address if none was provided. (*Id.*)

3       Next, within twenty-one (21) days after the entry of an order granting preliminary

4  approval, the Settlement Administrator will develop, maintain, and update a settlement website,

5  which will contain electronic versions of the Claim Form that can be downloaded and mailed to

6  the Settlement Administrator, allow Claim Forms to be submitted directly online, and will

7  provide additional information about the case, including all opt-out and exclusion deadlines.

8  (Settlement Agreement § 4.1(c); Settlement Agreement, Exhibit D.) Finally, this direct and

9  Internet notice will be supplemented through targeted Facebook ads. (*Id.* § 4.1(d).)[7]

10      In addition to reaching the settlement class, notice is adequate when it provides the

11  information necessary to make a decision in language that can be readily understood by the

12  average class member. Herbert Newberg & Alba Conte, Newberg on Class Actions § 11:53 (4th

13  ed. 2002). This is the case here, where the format and language of each form of notice have been

14  carefully drafted in straightforward, easy-to-read language, and all information required under

15  Rule 23 is present. (*See* Settlement Agreement, Exhibits B-D.)

16      Because the proposed methods for providing notice to the class comports with both Rule

17  23 and Due Process, the notice plan should be approved by the Court.

18  **VIII. CONCLUSION**

19      For the foregoing reasons, Plaintiff Hanson respectfully requests that the Court (1) certify

20  the proposed class for settlement purposes only, (2) appoint Plaintiff David Hanson as class

21  representative, (3) appoint Rafey S. Balabanian and Eve-Lynn Rapp of Edelson PC as class

22  counsel, (4) grant preliminary approval of the proposed settlement, (5) approve the proposed

23  notice plan, (6) schedule a final approval hearing, and (7) grant such further relief the Court

24  deems reasonable and just.

25

26  [7]    The Settlement Administrator shall also serve notice of the settlement consistent with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715. (Settlement Agreement § 4.1(e).)

27

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | **DAVID HANSON,** individually and on |
| 3 | behalf of all others similarly situated, |
| 4 | Dated: February 9, 2018 |

By: s/  Kevin A. Bay

One of Plaintiff's attorneys

Kim D. Stephens (WSBA No. 11984)
kstephens@tousley.com
Kevin A. Bay (WSBA No. 19821)
kbay@tousley.com
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Tel.: 206.682.5600
Fax: 206.682.2992

Rafey S. Balabanian*
rbalabanian@edelson.com
Eve-Lynn Rapp (*admitted pro hac vice*)
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel.: 415.212.9300
Fax: 415.373.9435

Alexander Darr*
darr@darrlawoffices.com
DARR LAW OFFICES
11650 Olio Road, Suite 1000-224
Fishers, Indiana 46037
Tel.: 312.857.3277
Fax: 855.225.3277

*Pro hac vice admission to be sought.*

*Attorneys for Plaintiff David Hanson and
the Putative Class*

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

25

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

## MEET AND CONFER ATTESTATION

Per the Court's standing order, I met and conferred with Jonathan Direnfeld, counsel for Defendants MGM Resorts International and Costco Wholesale Corporation, regarding Plaintiff's Motion for Preliminary Approval.  Defendants do not oppose Plaintiff's request for the entry of the proposed order granting Plaintiff's Motion for Preliminary Approval of the Class Action Settlement. Defendants, however, have not reviewed Plaintiff's Motion for Preliminary Approval of Class Action Settlement, and therefore reserve their rights to object to statements made in support of the motion.

s/ Eve-Lynn J. Rapp

PL.'S MOT. FOR PRELIM. APPROVAL
Case No. 2:16-cv-01661 RAJ

26

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**CERTIFICATE OF SERVICE**

2   I, Eve-Lynn J. Rapp, an attorney, hereby certify that on February 9, 2018, I served the

3 above and foregoing to by causing a true and accurate copy of such paper to be filed and

4 transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

5

6           s/ Eve-Lynn J. Rapp

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992