HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID HANSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MGM RESORTS INTERNATIONAL and COSTCO WHOLESALE CORPORATION,

Defendants.

CASE NO. 16-cv-001661-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff David Hanson's unopposed motion for preliminary approval of class certification and class action settlement. Dkt. # 34. For the reasons stated below, the Court **GRANTS** the Motion.

## II. BACKGROUND

On October 24, 2016, Plaintiff filed this case alleging that Defendants MGM Resorts International ("MGM") and Costco Wholesale Corporation ("Costco") (collectively, "Defendants"), violated the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and other state laws. Dkt. # 1. Defendant MGM is a hospitality and entertainment company that sells gift cards to consumers, which are redeemable at MGM's casinos, resorts, and affiliates ("MGM Gift Cards"). *Id.* at ¶¶ 22-24. Costco is a

ORDER - 1

membership-based wholesale warehouse club where MGM Gift Cards are available for purchase. *Id*. at ¶ 26.

Costco displayed signs advertising MGM Gift Cards that also stated that an "[i]nactivity fee will apply." *Id*. at ¶ 27. The MGM Gift Cards also indicate that a monthly inactivity fee would be assessed 18 months from a date specified on the cards, on cards showing no activity. In March of 2015, Plaintiff purchased 140 MGM Gift Cards at a Coscto in Seattle, Washington. *Id*. at ¶¶ 10, 36. The terms printed on each MGM Gift Card state that a monthly inactivity fee would be assessed "18 months from March 2015 on cards showing no activity," and that $2.50 monthly maintenance fee would be deducted from the card balance "after 18 months of no activity from the date printed on the front of the card." *Id*. at ¶¶ 32, 33, 38, 39. However, Plaintiff alleges that he was assessed a monthly fee of $2.50 beginning 12 months after his purchase. *Id*. at ¶ 40.

On October 24, 2016, Plaintiff filed this action against MGM and Costco on behalf of himself and similarly situated consumers who purchased MGM gift cards and incurred the same or similar inactivity fees. *Id*. at ¶ 41. Less than one month after Plaintiff filed his Complaint, Defendants represent that they fully refunded every MGM Gift Card on which an inactivity fee was prematurely assessed. Dkt. ## 16, 34. Defendants then filed a motion to dismiss, which was granted in part and denied in part. Dkt. ## 16, 28. Plaintiff alleges (1) a claim against MGM for breach of contract; (2) a claim against MGM and Costco for violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; (3) a claim against Costco for violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.*; (4) a claim against MGM for breach of express warranty; and (5) a claim against Costco for breach of express warranty. Dkt. # 1. Hanson brings the first and fourth claims individually and on behalf of a nationwide class, the second individually and on behalf of a nationwide EFTA subclass, the third individually and on behalf of a nationwide Washington CPA class, and the fifth individually and on behalf of a nationwide Costco subclass. He seeks actual, declaratory,

and injunctive relief.

Following the ruling on Defendants' motion to dismiss, the parties reached a settlement agreement. Dkt. # 34. The proposed Settlement Agreement provides for a settlement class of all individuals in the United States who, from October 24, 2010 to the date of preliminary approval of the settlement, purchased an MGM Gift Card and were assessed an inactivity fee that was deducted from the balance of funds remaining on the Gift Card. Dkt. # 34 Ex. 1. Plaintiff represents that there are approximately 22,500 settlement class members. Dkt. # 36. The Settlement Agreement also provides for a settlement fund in the amount of $150,000.00 from which each class member that submits a valid claim form will receive a *pro rata* portion. Any attorneys' fees, costs, claims administration costs, and an incentive award will also be drawn from this settlement fund. *Id.* In exchange for a portion of the settlement fund, settlement class members agree to release Defendants from any and all claims relating in any way to the assessment of inactivity fees on class members' MGM Gift Cards. *Id.*

### III. ANALYSIS

**A. Motion for Certification of the Class.**

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement. The settlement would require the Court to certify a class and dispose of the claims of its members. The Court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). Even for a class certified solely for purposes of settlement, the Court must ensure that the class and its proposed representatives meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, the

Court must ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Plaintiff proposes that the Court certify the class as follows:

> All individuals in the United States who, from October 24, 2010 to the date of preliminary approval of the settlement, purchased an MGM Gift Card and were assessed an inactivity fee that was deducted from the balance of funds remaining on the Gift Card.

Dkt. # 34 Ex. 1 at 8.

The court first considers whether the class Plaintiff hopes to certify satisfies the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The Court will then turn to whether the class satisfies one of the three sets of requirements of Rule 23(b). After that, the Court will address whether the settlement the parties have reached is, at least on a preliminary basis, fair, reasonable, and adequate.

1. Rule 23(a): Numerosity, Commonality, Adequacy, and Typicality.

The class Plaintiff hopes to certify satisfy the numerosity and commonality requirements of Rule 23(a). The parties submit that the approximate size of the proposed class is 22,500 individuals. Dkt. # 36. Joinder in this case would be impracticable. Fed. R. Civ. P. 23(a)(1). In addition, the Court finds that there is a common question for all class members: Did Defendants' conduct in representing that inactivity fees will only apply after eighteen months of inactivity, and charging such fees after twelve months of inactivity, violate the EFTA and other state laws? Fed. R. Civ. P. 23(a)(2); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (commonality only requires a single significant question of law or fact).

While the numerosity and commonality requirements focus on the class, the typicality and adequacy requirements focus on the class representative. The representative must have "claims or defenses . . . [that] are typical of the claims or defenses of the class,"

and must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).

The requirement of typicality is also met. Plaintiff's claims are identical to every other member of the proposed settlement class. Plaintiff, like the other class member, was allegedly prematurely charged inactivity fees on his MGM Gift Cards after twelve months of inactivity despite the representations on the cards themselves. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (representative's claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical.").

Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy. Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). The court has no difficulty concluding that counsel has provided and will likely continue to provide adequate representation for the proposed class. Additionally, the claims and interests of Plaintiff are not in conflict with any interests of the proposed class. Plaintiff shares the same interest in securing relief for the claims at issue in this case, and there is no allegation or evidence of any conflict of interest. Plaintiff has also demonstrated his willingness to diligently prosecute this case and has actively participated in this litigation, assisting his counsel with requests for information and engaging with counsel regarding potential settlement. Dkt. # 35.

2. Rule 23(b)(3): Predominance and Superiority

   *1. Predominance*

To meet the predominance requirement, common questions of law and fact must be "a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1022). To make this determination, the Court must

analyze the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

While there are several different claims at issue in this matter, there are several common factual and legal questions shared by the class members that represent a significant aspect of this case. Such questions include: 1) whether members of the proposed class were charged inactivity fees on their MGM Gift Cards; 2) whether Defendants failed to comply with the relevant disclosure requirements; 3) whether Defendants led settlement class members to believe that an inactivity fee would not be assessed before a certain amount of time had passed; 4) whether Defendants' assessment of inactivity fees constituted a breach of its duties to the proposed class members; and 5) whether the class members are entitled to damages. All of these are common issues that can be resolved for all members of the potential class in a single adjudication.

Rule 23(b)(3) does not require that a class be devoid of all individualized inquiries in order to be certified, only that the common questions of law and fact be a "significant aspect of the case." *Mazza*, 666 F.3d at 589. Therefore, despite the possible individualized nature of damages calculations in this matter, the Court nevertheless finds that "[c]lasswide resolution of the common issues is superior to the filing of multiple and duplicative lawsuits and will result in the efficient and consistent resolution of overarching questions." *Helde v. Knight Transp., Inc.*, No. C12-0904RSL, 2013 WL 5588311, at *5 (W.D. Wash. Oct. 9, 2013); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").

*2. Superiority*

Finally, the Court considers whether the class is superior to individual suits. *Amchem*, 521 U.S. at 615. "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative

mechanisms of dispute resolution. *Hanlon*, 150 F.3d at 1023. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis. Fed. R. Civ. P. 23(b)(3).

Plaintiff represents that individual damages in this case would be small given that Defendants have already refunded the inactivity fees that were assessed, and that the availability of statutory damages would be uncertain because of that refund. Further, violations of the EFTA provide for up to $1,000 in damages. 15 U.S.C. § 1693m. If the class members were forced to bring individual claims for relatively small amounts of damages, then many members would most likely refrain after realizing "the disparity between their litigation costs and what they hope to recover." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 672 (C.D. Cal. 2009) (quoting *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)). Accordingly, the superiority requirement of Rule 23(b)(3) is satisfied.

**B. Motion for Approval of Class Counsel**

In determining whether the proposed class counsel can fairly and adequately represent the interests of the proposed class, the Court must consider counsel's: 1) work in identifying or investigating potential claims; 2) experience in handling class actions or other complex litigation and the type of claims asserted in this case; 3) knowledge of the applicable law; and 4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court reviewed Plaintiff's counsel's supporting documentation and assessed counsel's representation of Plaintiff's claims thus far, and finds that Plaintiff's counsel has established that it can fairly and adequately represent the interests of the proposed class. Plaintiff's Motion for Approval of Class Counsel is **GRANTED.**

**C. Motion for Preliminary Approval of the Settlement Agreement.**

The Court's findings on the issue of whether the settlement is fair, reasonable, and adequate are necessarily preliminary.

Federal Rule of Civil Procedure 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

Courts have recognized that settlement class actions present unique due process concerns for absent class members, in part because of the risk of collusion between class counsel and the defendants. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). To assess the fairness of a settlement, the Court considers the following factors:

> "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). As there is no governmental participant and potential class members have not yet been informed of the proposed settlement, factors seven and eight will not be considered for the purposes of preliminary approval of this proposed settlement.

> *1. Strength of case, risk of further litigation, and risk of maintaining class action status*

Plaintiff recognizes that further litigation presents risk as to class certification, findings of liability, and the difficulty of proving actual damages. Setting aside Plaintiff's other state law claims, the EFTA provides for "any actual damage sustained by [the] consumer as a result" of noncompliance with the EFTA. 15 U.S.C. § 1693m(a)(1). As each class member would need to individually prove detrimental reliance on the inactivity fee disclosures in order to recover actual damages, Defendants would likely argue that Plaintiff cannot establish commonality, typicality, and predominance, should litigation proceed in this matter and Plaintiff moves for class certification. Plaintiff also acknowledges that he would most likely pursue statutory damages under the EFTA due to the difficulty in proving actual damages because of the alleged refund of inactivity fees. Further, due to the lack of legal precedent related to the EFTA, particularly with respect to gift cart inactivity fees, the outcome of Plaintiff's case is questionable. *See Cody v. SoulCycle Inc.*, No.

ORDER - 8

CV156457MWFJEMX, 2017 WL 6550682, at *3 (C.D. Cal. Oct. 3, 2017). Therefore, these factors weigh in favor of settlement approval.

   *2. Amount offered in settlement*

The Settlement Agreement also provides for a settlement fund in the amount of $150,000.00 from which each class member that submits a valid claim form will receive a *pro rata* portion. Any remaining amount will not revert to Defendants. Any attorneys' fees, costs, claims administration costs, and an incentive award will also be drawn from this settlement fund. *Id.* Class counsel has agreed to limit their request for attorneys' fees to no more than one-third of the Settlement Fund. The class representative will receive an incentive award in the amount of $5,000. Plaintiff represents that the proposed class members were fully refunded for each inactivity fee charged, therefore, their only claim for relief would be statutory damages under the EFTA. Dkt. # 34 at 20. Pursuant to 15 U.S.C. § 1693m(a)(2)(B), the total recovery for the class cannot be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant and there is no minimum recovery. Plaintiff argues that the $150,000 settlement fund represents an "exceptional result" considering the prior refunds and the risks of continued litigation.

Class counsel contends that they "spent significant time, effort, and other resources investigating the case, identifying the claims asserted, prosecuting the case through all phases of litigation-including fully briefing Defendants' motion to dismiss – and ultimately negotiating a settlement" after "several rounds of arm's length negotiations. Dkt. # 35 at ¶¶ 7, 10. The Court will not assume that counsel intends to seek attorneys' fees in the full amount allowed under the settlement agreement, however, it is possible that counsel will seek the full award, or $50,000. Subtracting the amount allotted for the class representative's incentive award, the remaining amount in the settlement fund would be $95,000. Considering the potential difficulty in establishing actual damages in this case, the fact that the settlement fund represents one-third of the maximum statutory damages allowed under the EFTA, and that the statutory damages are purely at the

discretion of the Court, the amount offered in settlement weighs in favor of preliminary approval.

   *3. Extent of discovery completed and the stage of proceedings*

Plaintiff contends that the amount of discovery completed and the stage of the proceedings demonstrate that the parties had enough information to make an informed decision about settlement. Prior to engaging in settlement negotiations, the parties represent that they had full understanding of their positions and views of the case, and were able assess the benefits of a potential settlement. The parties reached the proposed settlement after several rounds of arm's-length negotiations. Dkt. # 35 at ¶¶ 6, 7. The Court finds that this factor also weighs in favor of settlement approval.

   *4. Experience and views of Class Counsel*

Class Counsel have extensive experience litigating class actions. Counsel believes that the settlement is fair, reasonable, and adequate, and in the best interests of the class. This settlement was reached after multiple communications and is a result of careful consideration and analysis. Dkt. # 35. This factor also weighs in favor of preliminary settlement approval.

## D. Attorneys' Fees and Incentive Award

As noted above, Class Counsel has agreed to limit their request for attorneys' fees to no more than one-third of the Settlement Fund. The Ninth Circuit has established a benchmark award for attorney's fees of twenty-five percent of the common fund. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Such findings include: that counsel achieved exceptional results for the class, the case was extremely risky for counsel, and counsel's performance generated benefits beyond the cash settlement fund. *Id.* at 1048-1049. Plaintiff represents that Defendants' decision to refund inactivity fees was a direct result of counsel's efforts in this case and that the settlement fund represents a significant payment for each class member. Considering the

amount to be divided between 22,500 potential class members, the Court finds that the cash payment each participating member may receive is not necessarily "significant." However, it is notable that Class Counsel's actions resulted in full refunds for potential class members. The Court expects that counsel will provide detailed billing records when it files its motion for attorney's fees and costs. Accordingly, the Court will reserve its ruling on attorney's fees until it has reviewed Plaintiff's motion for attorney's fees to determine whether an upward departure to one-third of the common fund is warranted. For the purpose of this preliminary Order, the relevant provision in the proposed settlement agreement only secures the Plaintiff's agreement not to seek fees in excess of one-third of the settlement fund. Dkt. # 34 Ex. 1.

Plaintiff also seeks an incentive award in the amount of $5,000. To avoid the danger of named plaintiffs bringing class actions to increase their own monetary gain, courts generally preclude named plaintiffs from obtaining such a preferred position in the settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003). With that in mind, the Ninth Circuit has approved incentive awards for named plaintiffs when the district court takes into consideration relevant factors, such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Id.* at 977 (internal quotations omitted). Plaintiff has actively participated in this litigation and his efforts have required significant time commitments. His efforts led to refunds for potential class members as well as this

additional cash settlement. Dkt. # 35 at ¶ 9. For the purposes of this preliminary approval, the Court finds that an award of $5,000 to Plaintiff is appropriate.

**E. Class Notice Package.**

For a class certified under Federal Rule of Civil Procedure 23(b)(1), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). The Court finds that the form of notice that counsel provided is reasonable.

## IV. CONCLUSION

For the reasons stated above, the court **GRANTS** Plaintiff's unopposed motion for preliminary approval of the Settlement Agreement. Dkt. # 34. It is **ORDERED** that:

1. A hearing regarding final approval of the Settlement ("Final Approval Hearing") will be held on **September 28, 2018 at 1:30p.m.** before the Honorable Richard A. Jones, to determine, among other things: (i) whether final approval of the Settlement Agreement should be granted and (ii) whether Class Counsel's application for attorney's fees and expenses and an incentive award to the Class Representative should be granted. **No later than October 15, 2018**, Plaintiff must file his papers in support of Class Counsel's application for attorneys' fees and expenses. **No later than September 14, 2018,** Plaintiff must file his papers in support of final approval of the Settlement Agreement and in response to any objections.

2. The Court approves the Notice in the Settlement Agreement, including the manner and content of direct notice attached as Exhibits B–C to the Settlement Agreement ("Direct Notice") and the creation of the Settlement Website, as more fully described in the Settlement Agreement and attached as Exhibit D thereto. The Court finds that this is the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise the Settlement Class of the pendency of this Litigation, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Settlement Class. The Court further finds that Direct

Notice and the other forms of Notice in the Settlement Agreement are reasonable, constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and meet the requirements of due process and Rule 23. The Direct Notice shall be transmitted not less than thirty (30) days after the entry of this Order.

3. Pursuant to the Settlement Agreement, Heffler Claims Group is hereby appointed as Settlement Administrator and shall be required to perform all of the duties of the Settlement Administrator as set forth in the Settlement Agreement and this Order.

4. Any Settlement Class Member who wishes to be excluded from the Settlement Class must send a written request for exclusion to the Settlement Administrator, by first-class mail, postage prepaid, to the address provided in the direct notice and Settlement Website ("Request for Exclusion"). To be valid, any request for exclusion must (i) be in writing; (ii) identify the case name "*Hanson v. MGM Resorts International, et al.*, Case No. 2:16-cv-01661 (W.D. Wash.)," (iii) state the name, address and telephone number of the Person in the Settlement Class seeking exclusion; (iv) be physically signed by the individual(s) seeking exclusion; and (v) be postmarked or received by the Settlement Administrator on or before the Objection/Exclusion Deadline. Each request for exclusion must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class." Mass or class opt outs shall not be allowed. If the proposed settlement is approved, any Settlement Class Member who has not submitted a timely and proper written Request for Exclusion from the Settlement Class shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, even if he or she has pending, or subsequently initiates, litigation against Defendants relating to any of the Released Claims in the Settlement Agreement.

5. Any Settlement Class Member who has not filed a timely and proper written request for exclusion and who complies with the requirements of this Paragraph may comment in support of, or in opposition to, any aspect of the proposed Settlement either

on his or her own or through an attorney hired at his or her expense. Any papers submitted in support of said objection shall be received by the Court at the Final Approval Hearing, only if the Person making an objection files, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, notice of his or her intention to do so and at the same time (a) files copies of such papers he or she proposes to submit at the Final Approval Hearing with the Clerk of the Court, (b) files copies of such papers through the Court's CM/ECF system if the objection is from a Settlement Class Member represented by counsel, who must also file an appearance, and (c) sends copies of such papers via mail, hand, or overnight delivery service to both Class Counsel and Defense Counsel at the following locations:

| **Class Counsel** | **Defense Counsel** |
|---|---|
| Rafey S. Balabanian | Aravind Swaminathan |
| Eve-Lynn Rapp | Charles Ha |
| EDELSON PC | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 123 Townsend, Suite 100 | 701 5th Avenue, Suite 5600 |
| San Francisco, California 94107 | Seattle, WA 98104-7097 |
| Telephone: (415) 212-9300 | Telephone: (206) 839-4300 |
| Facsimile: (415) 373-9435 | Facsimile: (206) 839-4301 |

6. Any Settlement Class Member who intends to intervene and object to this Settlement must present the objection in writing, which must be personally signed by the objector and must include: (i) the Settlement Class Member's full name and current address, (ii) a statement that he or she purchased a MGM Gift Card and were assessed an inactivity fee that was deducted from the balance of funds remaining on the Gift Card, (iii) the specific grounds for the objection, (iv) all documents or writings that the Settlement Class Member desires the Court to consider, (v) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of

the objection; and (vi) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance). All written objections must be filed and postmarked, emailed, or submitted to the Settlement Website no later than the Objection/Exclusion Deadline.

7. Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Order and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to the Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in this Litigation or any other action or proceeding.

8. If the Settlement is finally approved, all Settlement Class Members who have not filed a timely and proper request for exclusion shall release the Released Parties from all Released Claims, as described in Section 3 of the Settlement Agreement.

9. This Order shall become null and void, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions in the Litigation as of the date of the signing the Settlement Agreement, if (i) the proposed Settlement is not finally approved by the Court, or does not become effective in accordance with the Settlement Agreement's Effective Date (as defined in the Settlement Agreement), pursuant to the terms of the Settlement Agreement; or (ii) the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement for any reason. In such event, the certification of the Settlement Class and any Final Judgment or other order entered by the Court in the Litigation in accordance with the terms of the Settlement Agreement shall be deemed vacated, *nunc pro tunc* and without prejudice to Defendants' right to contest class certification, and the Parties shall be returned to the

*status quo ante* with respect to the Litigation as if the Settlement Agreement had never been entered into.

10. This Order shall be of no force and effect if the Settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability, or by or against Plaintiff or the Settlement Class Members that their claims lack merit or that the relief requested in the class complaint in this Litigation is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses they may have.

11. The Court authorizes the Parties to take all necessary and appropriate steps to implement the Settlement Agreement.

12. The Court authorizes the Parties to take all necessary and appropriate steps to implement the Settlement Agreement.

Dated this 31st day of July, 2018.

							*[signature]*
							The Honorable Richard A. Jones
							United States District Judge